UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | No. **17 CR 643** |
|---|---|---|
| | ) | |
| v. | ) | Violations: Title 15, United States |
| | ) | Code, Sections 78j(b) and 78ff; |
| BRET BESHEY, | ) | Title 17, Code of Federal |
| SHANE FLEMING, | ) | Regulations, Section 240.10b-5; and |
| PETER KOURTIS, | ) | Title 18, United States Code, |
| CHASITY CLARK, | ) | Section 371 |
| AUSTIN MANSUR, | ) | |
| ERIC WELLER, | ) | JUDGE DER-YEGHIAYAN |
| ALEX CARLUCCI, | ) | |
| DIMITRI KANDALEPAS, and | ) | |
| CHRISTOPHER BONVISSUTO | ) | |

MAGISTRATE JUDGE SCHENKIER

FILED
SEP 2 8 2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### COUNT ONE

The SPECIAL FEBRUARY 2017 GRAND JURY charges:

1. At times material to this indictment:

    a. Life Time Fitness, Inc. was a Minnesota-based company that owned a chain of fitness centers operating in the United States and Canada. Life Time Fitness, Inc.'s common stock traded on the New York Stock Exchange.

    b. When the New York Stock Exchange closed on March 5, 2015, Life Time Fitness, Inc.'s share price was $57.67. After the close of trading on March 5, 2015, the Wall Street Journal published an article stating that Life Time Fitness, Inc. was in advanced discussions to sell all of the company's outstanding shares to one of two private equity firms. On March 6, 2015, Life Time Fitness, Inc.'s share price increased to a high of $69.13.

    c. On or about the morning of March 16, 2015, Life Time Fitness,

Inc. issued a press release announcing that two private equity firms were purchasing all of the company's shares for $72.10 per share.

      d.      Defendant SHANE FLEMING was employed as a Vice President of Corporate Sales at Life Time Fitness, Inc. FLEMING resided in Chanhassen, Minnesota.

      e.      On or about February 23, 2015, in the course of his employment at Life Time Fitness, Inc., FLEMING learned material, nonpublic information concerning the advanced acquisition discussions between Life Time Fitness, Inc. and the two private equity firms, which FLEMING learned would result in an increase in Life Time Fitness, Inc.'s stock price to at least $65 per share.

      f.      As an employee of Life Time Fitness, Inc., FLEMING owed a fiduciary duty and other duties of trust and confidence to Life Time Fitness, Inc. to maintain the confidentiality of any material, nonpublic information he learned and obtained during the course of his employment at Life Time Fitness, Inc. Among other things, these duties required that FLEMING abstain from disclosing to others (i.e., "tipping") any material, nonpublic information about Life Time Fitness, Inc., including nonpublic information about upcoming mergers or acquisitions, a duty expressly explained to FLEMING on or about February 23, 2015, by a Life Time Fitness, Inc. attorney.

      g.      Defendants BRET BESHEY and SHANE FLEMING had been friends since in or about 1996. Since in or about 2013, they had been partners in an

online advertising business. BESHEY resided in Cave Creek, Arizona.

h. Defendant CHASITY CLARK was BRET BESHEY's girlfriend and resided with BESHEY in Cave Creek, Arizona.

i. Defendants CHRISTOPHER BONVISSUTO and CHASITY CLARK have been friends since the 1980s. CLARK introduced BRET BESHEY to BONVISUTTO in or about 2010. BONVISSUTO had sole authority over a securities brokerage account held in his name at Scottrade, Inc., an online brokerage firm. BONVISUTTO resided in Buffalo, New York.

j. Defendants PETER KOURTIS and BRET BESHEY had been friends since in or about 2003. Since in or about 2014, KOURTIS and BESHEY had been partners in an online advertising business. KOURTIS had sole authority over securities brokerage accounts held in his name at the brokerage firms Charles Schwab and TD Ameritrade. KOURTIS resided in Palatine, Illinois and Niles, Illinois.

k. Defendants ERIC WELLER and PETER KOURTIS had been friends since in or about 1989. WELLER had sole authority over a securities brokerage account held in his name at Interactive Brokers, an online brokerage firm. WELLER resided in Hermosa Beach, California.

l. Defendants AUSTIN MANSUR and PETER KOURTIS had been friends since at least the summer of 2006. MANSUR had sole authority over securities brokerage accounts held in his name at Fidelity Investments, a brokerage

3

firm. MANSUR resided in Chicago, Illinois.

m. Defendants ALEX CARLUCCI and PETER KOURTIS had been friends since in or about 2002. CARLUCCI had sole authority over a securities brokerage account held in his name at Charles Schwab, a brokerage firm. CARLUCCI resided in Clarendon Hills, Illinois.

n. Defendants DIMITRI KANDALEPAS and PETER KOURTIS had known each other through KANDALEPAS' relative, INDIVIDUAL A. Beginning no later than 2010, KOURTIS had invested tens of thousands of dollars in numerous businesses operated by INDIVIDUAL A, including COMPANY A, where KANDALEPAS had been employed since 2013. KANDALEPAS had sole authority over a securities brokerage account he held in his name at TD Ameritrade, an online brokerage firm. KANDALEPAS resided in Schaumburg, Illinois.

o. A call option to purchase a stock provided the holder the right, but not the obligation, to purchase a certain number of shares (usually 100) of a stock at a particular price (referred to as the "strike price") on a specific date in the future. A call option was "out of the money" if the strike price of the option was higher than the stock price at the time the option was purchased.

p. Life Time Fitness, Inc. stock options were traded on the Chicago Board Options Exchange (CBOE), a national securities exchange with its headquarters and operations in Chicago, Illinois. The CBOE cleared stock options trades through the Options Clearing Corporation (OCC), which was headquartered

4

in Chicago, Illinois.

## THE CONSPIRACY TO ENGAGE IN INSIDER TRADING

2.      Beginning no later than February 2015, and continuing until at least in or about January 2017, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

>BRET BESHEY,
>SHANE FLEMING,
>PETER KOURTIS,
>CHASITY CLARK,
>AUSTIN MANSUR,
>ERIC WELLER,
>ALEX CARLUCCI,
>DIMITRI KANDALEPAS, and
>CHRISTOPHER BONVISSUTO,

defendants herein, conspired with each other, and with others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to willfully use and employ, by use of the facilities of national securities exchanges, directly and indirectly, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device and scheme to defraud; and (b) engaging in an act, practice, and a course of business which operated and would operate as a fraud and deceit upon any person, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

3.      It was part of the conspiracy that:

a.	As part of his employment at Life Time Fitness, Inc., on or about February 23, 2015, FLEMING learned material, nonpublic information concerning advanced acquisition discussions between Life Time Fitness, Inc. and two private equity firms, which FLEMING learned would result in an increase in Life Time Fitness, Inc.'s stock price to at least $65 per share, and FLEMING misappropriated that material, nonpublic information in violation of the fiduciary and other duties of trust and confidence he owed to Life Time Fitness, Inc. For FLEMING's benefit, and for the benefit of BESHEY, with whom FLEMING had a close personal relationship, on or about February 23, 2015, FLEMING agreed to and did provide to BESHEY material, nonpublic information about the Life Time Fitness, Inc. acquisition knowing that BESHEY would use that information to purchase and sell securities, or cause others to purchase and sell securities, while in possession of that information. BESHEY and FLEMING further agreed that BESHEY would pay FLEMING some of the profits from those purchases and sales of securities.

b.	On or about February 23, 2015, BESHEY, while in possession of the material, nonpublic information he received from FLEMING, which information BESHEY knew FLEMING had misappropriated from Life Time Fitness, Inc. in breach of a duty of trust and confidence to keep such information confidential, provided the information to KOURTIS, BONVISSUTO, and CLARK. Based on the information provided by BESHEY, KOURTIS, BONVISUTTO, and CLARK knew: (i) that the source of the information was BESHEY's long-time and close personal friend,

"Shane"; (ii) that "Shane" was a senior employee at Life Time Fitness, Inc.; and (iii) that "Shane" had misappropriated the material, nonpublic information from Life Time Fitness, Inc. in breach of a duty of trust and confidence to keep such information confidential.

    c. BESHEY agreed with KOURTIS, who had a close personal relationship with BESHEY, that KOURTIS would purchase out-of-the-money Life Time Fitness, Inc. call options while in possession of the material, nonpublic information. BESHEY and KOURTIS further agreed that KOURTIS would pay BESHEY some of the profits from those purchases and sales of securities.

    d. BESHEY agreed with BONVISSUTO, who had a close personal relationship with CLARK, that BONVISSUTO would purchase out-of-the-money Life Time Fitness, Inc. call options while in possession of the material, nonpublic information. BESHEY, CLARK, and BONVISSUTO further agreed that BONVISSUTO would pay BESHEY and CLARK some of the profits from those purchases and sales of securities, a portion of which BESHEY and CLARK would share with FLEMING.

    f. Beginning on or about February 24, 2015, KOURTIS, while in possession of the material, nonpublic information he received from BESHEY, which information KOURTIS knew that BESHEY's close personal friend and Life Time Fitness, Inc. insider, "Shane," had misappropriated in breach of a duty of trust and confidence to keep such information confidential, provided the information to

7

WELLER, MANSUR, CARLUCCI, and KANDALEPAS, with each of whom KOURTIS had a close personal relationship. Based on the information provided by KOURTIS, WELLER, MANSUR, CARLUCCI, and KANDALEPAS knew: (i) that KOURTIS had learned the material, nonpublic information from KOURTIS' close personal friend; (ii) that KOURTIS's close personal friend had learned the information from a close personal friend and senior employee at Life Time Fitness, Inc.; and (iii) that the senior employee at Life Time Fitness, Inc. had misappropriated the material, nonpublic information from Life Time Fitness, Inc. in breach of a duty of trust and confidence to keep such information confidential.

  g. KOURTIS agreed with WELLER, MANSUR, CARLUCCI, and KANDALEPAS that they would each purchase out-of-the-money Life Time Fitness, Inc. call options while in possession of the material, nonpublic information.

  h. KOURTIS and WELLER further agreed that WELLER would pay some of the profits from WELLER's purchases and sales of securities to KOURTIS.

  h. KOURTIS and MANSUR further agreed that MANSUR would pay some of the profits from MANSUR's purchases and sales of securities to KOURTIS.

  i. KOURTIS and CARLUCCI further agreed that CARLUCCI would pay some of the profits from CARLUCCI's purchases and sales of securities to KOURTIS.

j. WELLER, MANSUR, CARLUCCI, and KANDALEPAS knew that the information they received from KOURTIS was confidential, material, and nonpublic and that FLEMING or another insider at Life Time Fitness, Inc. had misappropriated the information in breach of a duty of trust and confidence owed to Life Time Fitness, Inc.

k. Beginning on or about February 23, 2015 and continuing until at least January 2017, BESHEY, FLEMING, KOURTIS, CLARK, MANSUR, WELLER, CARLUCCI, KANDALEPAS, and BONVISSUTO misrepresented, concealed, and hid, and caused to be misrepresented, concealed and hidden, the existence, purposes, and acts done in furtherance of the conspiracy.

**OVERT ACTS**

4. To effect the object of the conspiracy, defendants BESHEY, FLEMING, KOURTIS, CLARK, MANSUR, WELLER, CARLUCCI, KANDALEPAS, and BONVISSUTO committed and caused to be committed the following overt acts, among others, at Chicago, in the Northern District of Illinois, and elsewhere:

a. On or about February 23, 2015, FLEMING provided BESHEY with material, nonpublic information that FLEMING had obtained about the imminent acquisition of Life Time Fitness, Inc. for at least $65 per share.

b. Beginning on or about February 23, 2015, BESHEY provided material, nonpublic information regarding the acquisition of Life Time Fitness, Inc. that he received from FLEMING to KOURTIS, BONVISSUTO and CLARK.

c. Beginning on or about February 24, 2015, KOURTIS provided the material, nonpublic information regarding Life Time Fitness, Inc. that he had received from BESHEY to WELLER, MANSUR, KOURTIS and KANDALEPAS.

d. Beginning on or about February 25, 2015, BONVISSUTO, while in possession of the material, nonpublic information, used approximately $5,296 in a securities brokerage account held in his name at Scottrade to purchase approximately 144 out-of-the money Life Time Fitness, Inc. call options with an expiration date of March 20, 2015, and a strike price of $65 per share.

e. Beginning on or about February 25, 2015, KOURTIS, while in possession of the material, nonpublic information, used approximately $10,427 in securities brokerage accounts held in his name at Charles Schwab and TD Ameritrade to purchase approximately 300 out-of-the money Life Time Fitness, Inc. call options with an expiration date of March 20, 2015, and a strike price of $65 per share.

f. Beginning on or about February 25, 2015, WELLER, while in possession of the material, nonpublic information, used approximately $54,349 in a securities brokerage account held in his name at Interactive Brokers to purchase approximately 1,010 out-of-the money Life Time Fitness, Inc. call options with an expiration date of March 20, 2015, and strike prices of $60 and $65 per share.

g. Beginning on or about February 26, 2015, MANSUR, while in possession of the material, nonpublic information, used approximately $30,841 in

securities brokerage accounts at Fidelity to purchase approximately 465 out-of-the money Life Time Fitness, Inc. call options with expiration dates of March 20, 2015 and April 17, 2015, and strike prices of $60, $65, and $70 per share, as well as approximately 250 shares of Life Time Fitness, Inc. common stock.

      h.      Beginning on or about March 2, 2015, CARLUCCI, while in possession of the material, nonpublic information, used approximately $2,023 in a securities brokerage account held in his name at Charles Schwab to purchase approximately 40 out-of-the money Life Time Fitness, Inc. call options with an expiration date of March 20, 2015, and strike prices of $60 and $65 per share.

      i.      Beginning on or about March 3, 2015, KANDALEPAS, while in possession of the material, nonpublic information, used approximately $2,918 in a securities brokerage account held in his name at TD Ameritrade to purchase approximately 140 out-of-the money Life Time Fitness, Inc. call options with an expiration date of March 20, 2015, and a strike price of $65 per share.

      j.      Beginning on or about March 6, 2015, KOURTIS, WELLER, MANSUR, CARLUCCI, KANDALEPAS, and BONVISUTTO began selling the Life Time Fitness, Inc. call options and received illegal proceeds totaling approximately $866,629.

      k.      Beginning in or about March 2015, KOURTIS paid BESHEY and CLARK approximately $8,000, which KOURTIS provided as payment for the Life Time Fitness, Inc. trading profits KOURTIS owed to BESHEY and CLARK.

l.  On or about March 11, 2015, CLARK deposited a $3,000 check, made payable to CLARK, which KOURTIS sent as payment for a portion of the Life Time Fitness, Inc. trading profits KOURTIS owed to BESHEY and CLARK.

m.  On or about March 16, 2015, CLARK deposited a $3,000 check, made payable to CLARK, which KOURTIS sent as payment for a portion of the Life Time Fitness, Inc. trading profits KOURTIS owed to owed to BESHEY and CLARK.

n.  On or about March 16, 2015, CLARK instructed BONVISUTTO to mail her two checks totaling approximately $11,300, each in an amount less than $10,000, which checks were BONVISSUTO's payment to CLARK, BESHEY, and FLEMING for the material, nonpublic information about Life Time Fitness, Inc.

o.  On or about March 16, 2015, BONVISSUTO mailed two cashier's checks to CLARK totaling $11,300, which BONVIUSSUTO mailed as payment for the Life Time Fitness, Inc. trading profits he owed to CLARK, BESHEY, and FLEMING. One check was payable to CLARK in the amount of $5,700, and the other was payable to CLARK in the amount of $5,600.

p.  On or about March 20, 2015, CLARK deposited the $5,700 check from BONVISUTTO, which BONVIUSSUTO sent as a partial payment for the Life Time Fitness, Inc. trading profits he owed to CLARK, BESHEY, and FLEMING.

q.  On or about March 24, 2015, CLARK deposited the $5,600 check from BONVISUTTO, which BONVIUSSUTO sent as a partial payment for the Life Time Fitness, Inc. trading profits he owed to CLARK, BESHEY, and FLEMING.

r. On or about March 26, 2015, FLEMING met with BESHEY and CLARK in Scottsdale, Arizona and received approximately $9,500 from CLARK and BESHEY, as a partial payment of FLEMING's share of the co-conspirators' illegal trading profits.

s. In or about March 2015, CARLUCCI paid KOURTIS approximately $900 as payment for the trading profits CARLUCCI owed to KOURTIS.

t. Between in or about March 2015 and in or about September 2016, WELLER gave KOURTIS at least 10 pounds of marijuana as payment for the trading profits WELLER owed to KOURTIS. KOURTIS sold the marijuana to others and profited at least $20,000.

u. On or about April 7, 2015, MANSUR paid KOURTIS approximately $1,000 as payment for the trading profits MANSUR owed to KOURTIS.

All in violation of Title 18, United States Code, Section 371.

# COUNTS TWO through TEN

The SPECIAL FEBRUARY 2017 GRAND JURY further charges:

1. The allegations in paragraphs 1, 3(a)-(k), and 4(a)-(u) of Count One of this indictment are incorporated here.

2. Beginning on or about February 25, 2015, and continuing until on or about least March 16, 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> BRET BESHEY,
> SHANE FLEMING,
> PETER KOURTIS,
> CHASITY CLARK,
> AUSTIN MANSUR,
> ERIC WELLER,
> ALEX CARLUCCI,
> DIMITRI KANDALEPAS, and
> CHRISTOPHER BONVISSUTO,

defendants herein, directly and indirectly, by the use of the facilities of a national securities exchange, willfully used and employed, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device and scheme to defraud; and (b) engaging in an act, practice, and a course of business which operated and would operate as a fraud and deceit upon any person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

3. On or about the approximate dates below, at Chicago, in the Northern

District of Illinois, Eastern Division, and elsewhere,

BRET BESHEY,
SHANE FLEMING,
PETER KOURTIS,
CHASITY CLARK,
AUSTIN MANSUR,
ERIC WELLER,
ALEX CARLUCCI,
DIMITRI KANDALEPAS, and
CHRISTOPHER BONVISSUTO,

defendants herein, for the purpose of executing the above-described scheme to defraud, in connection with the purchases and sales of securities identified below, willfully used and caused the use of a facility of a national securities exchange:

| COUNT | DEFENDANTS | DATE | TRANSACTION | NATIONAL SECURITIES EXCHANGE |
|---|---|---|---|---|
| Two | FLEMING, BESHEY, and KOURTIS | On or about February 25, 2015 | KOURTIS' purchase of 50 Life Time Fitness, Inc. call options with a strike price of $65 and an expiration date of March 20, 2015 | Chicago Board Options Exchange (CBOE) |
| Three | FLEMING, BESHEY, KOURTIS, and WELLER | On or about February 26, 2015 | WELLER's purchase of 100 Life Time Fitness, Inc. call options with a strike price of $65 and an expiration date of March 20, 2015 | Chicago Board Options Exchange (CBOE) |

| | | | | |
|---|---|---|---|---|
| Four | FLEMING, BESHEY, KOURTIS, and WELLER | On or about February 26, 2015 | WELLER's purchase of 138 Life Time Fitness, Inc. call options with a strike price of $65 and an expiration date of March 20, 2015 | Chicago Board Options Exchange (CBOE) |
| Five | FLEMING, BESHEY, KOURTIS, and MANSUR | On or about February 27, 2015 | MANSUR's purchase of 50 Life Time Fitness, Inc. call options with a strike price of $65 and an expiration date of March 20, 2015 | Chicago Board Options Exchange (CBOE) |
| Six | FLEMING, BESHEY, KOURTIS, and MANSUR | On or about February 27, 2015 | MANSUR's purchase of 50 Life Time Fitness, Inc. call options with a strike price of $65 and an expiration date of March 20, 2015 | Chicago Board Options Exchange (CBOE) |
| Seven | FLEMING, BESHEY, KOURTIS, and WELLER | On or about February 27, 2015 | WELLER's purchase of 150 Life Time Fitness, Inc. call options with a strike price of $65 and an expiration date of March 20, 2015 | Chicago Board Options Exchange (CBOE) |
| Eight | FLEMING, BESHEY, CLARK, and BONVISSUTO | On or about February 27, 2015 | BONVISSUTO's purchase of 97 Life Time Fitness, Inc. call options with a strike price of $65 and an expiration date of March 20, 2015 | Chicago Board Options Exchange (CBOE) |

| Nine | FLEMING, BESHEY, KOURTIS, and CARLUCCI | On or about March 2, 2015 | CARLUCCI's purchase of 25 Life Time Fitness, Inc. call options with a strike price of $65 and an expiration date of March 20, 2015 | Chicago Board Options Exchange (CBOE) |
|---|---|---|---|---|
| Ten | FLEMING, BESHEY, KOURTIS, and KANDALEPAS | On or about March 3, 2015 | KANDALEPAS' purchase of 140 Life Time Fitness, Inc. call options with a strike price of $65 and an expiration date of March 20, 2015 | Chicago Board Options Exchange (CBOE) |

In violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

# FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2017 GRAND JURY further charges:

1. The allegations in Counts 1 - 10 of this indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of his violations of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17 Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 371, as alleged in Counts 1 - 10 of this indictment,

BRET BESHEY,
SHANE FLEMING,
PETER KOURTIS,
CHASITY CLARK,
AUSTIN MANSUR,
ERIC WELLER,
ALEX CARLUCCI,
DIMITRI KANDALEPAS, and
CHRISTOPHER BONVISSUTO,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title, and interest he may have in any property constituting, and derived from, proceeds they obtained directly or indirectly as the result of such violations.

3. The interests of defendants subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), includes the sum of at least $866,629.

4. If any of the forfeitable property described above, as a result of any act or omission by defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

_____
FOREPERSON

_____
ACTING UNITED STATES ATTORNEY