UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 17 CR 643 |
| v. | ) | |
| | ) | Judge Matthew F. Kennelly |
| ERIC WELLER, et al. | ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT DIRECT
EVIDENCE OF THE CHARGED CONSPIRACY AT TRIAL**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully moves this Court, *in limine*, to admit direct evidence of the charged conspiracy. Specifically, the government seeks a ruling from the Court allowing testimony that defendant Eric Weller paid co-defendant Peter Kourtis at least 10 pounds of marijuana as a kickback for the material, nonpublic information that Kourtis disclosed to Weller, which Weller had used to trade and profit more than $550,000. As explained below, this evidence is not subject to Federal Rule of Evidence Rule 404(b) because it is direct evidence of the charged insider trading conspiracy in this case. In addition, the evidence is not barred by Federal Rule of Evidence 403 because the probative value of the evidence is not substantially outweighed by its prejudicial effect.

**BACKGROUND**

This is an insider trading case. The indictment alleges that, beginning in February 2015, defendant Eric Weller and eight co-defendants participated in a conspiracy to engage in insider trading in the publicly traded stock and stock options of Life Time Fitness, Inc. For illustrative purposes, the following diagram summarizes the flow of the material, nonpublic information among the nine defendants as alleged in the indictment:

1



The indictment alleges that defendant Shane Fleming, while working as the Vice President of Corporate Sales at Life Time Fitness, Inc., learned material, nonpublic information about Life Time Fitness, Inc., namely, that Life Time Fitness, Inc. would be acquired by another company within the next 30 days, and the sale would cause Life Time Fitness, Inc.'s share price to increase to at least $65 per share. Indictment at ¶¶ 1(e) and 1(f). The indictment further alleges that Fleming knew he owed Life Time Fitness duties of confidentiality and loyalty that prohibited him from disclosing the information he had learned about the upcoming acquisition of Life Time Fitness by a private company. *Id.* According to the indictment, Fleming breached the duties he owed to Life Time, and did so in exchange for a personal benefit, when he shared the material, nonpublic information with his long-time friend, co-defendant Bret Beshey, knowing Beshey would use the information to trade or have others trade. Indictment at ¶¶ 1(g) and 3(a).

The indictment also alleges that, after learning the material, nonpublic information from Fleming, in late February 2015 Beshey shared the information with, among others, his long-time friend and business partner, co-defendant Peter Kourtis. According to the indictment, based on the information from Beshey, Kourtis knew: "(i) that the source of the information was BESHEY's long-time and close personal friend, "Shane"; (ii) that "Shane" was a senior employee at Life Time

Fitness, Inc.; and (iii) that "Shane" had misappropriated the material, nonpublic information from Life Time Fitness, Inc. in breach of a duty of trust and confidence to keep such information confidential." Indictment at ¶ 3(b). The indictment alleges that Beshey and Kourtis agreed that Kourtis would purchase out-of-the-money Life Time Fitness, Inc. call options while in possession of the material, nonpublic information. Beshey and Kourtis further agreed that Kourtis would pay Beshey some of the profits from those purchases and sales of securities. Indictment at ¶ 3(c).

According to the indictment, Kourtis then shared the material, nonpublic information about Life Time Fitness with Weller as well as with co-defendants Mansur, Carlucci, and Kandalepas, and they agreed to use the material, nonpublic information to trade and share some of their insider trading profits with Kourtis. Indictment at ¶¶ 3(c) and 4(c). The indictment alleges that based on information provided by Kourtis, Mansur, Weller, Carlucci and Kandalepas understood: "(i) that KOURTIS had learned the material, nonpublic information from KOURTIS' close personal friend [co-defendant Beshey]; (ii) that KOURTIS's close personal friend [Beshey] had learned the information from a close personal friend and senior employee at Life Time Fitness, Inc. [Fleming]; and (iii) that the senior employee at Life Time Fitness, Inc. [Fleming] had misappropriated the material, nonpublic information from Life Time Fitness, Inc. in breach of a duty of trust and confidence to keep such information confidential." Indictment at ¶ 3(f).

The indictment alleges that, after receiving the material, nonpublic information about Life Time Fitness, Weller, Mansur, Kourtis and other co-defendants agreed to and in fact purchased Life Time Fitness stock and stock options. Indictment at ¶¶ 3(g), 4(f)-(g). When news of the upcoming acquisition became public, the defendants sold the Life Time stock and stock options and collectively received and shared approximately $866,000 in illegal trading profits. Indictment at ¶ 4(j). Below is a chart summarizing the approximate insider trading profits for the six

defendants who traded in late February and early March 2015 using the material, nonpublic information about Life Time Fitness:

| Trader | First Purchase | Sales Started | # of Contracts | Call Expiration | Strike Price | Total Purchase Price | Total Sales Proceeds | Profit |
|---|---|---|---|---|---|---|---|---|
| Weller | 2/25/2015 | 3/6/2015 | 1,010 | 3/20 | 60, 65, 70 | $54,349.38 | $609,127.19 | $554,777.81 |
| Mansur | 2/26/2015 | 3/6/2015 | 465 | 3/20 & 4/17 | 60, 65, 70 | $30,841.44 | $164,167.45 | $133,326.01 |
| Kourtis | 2/25/2015 | 3/6/2015 | 300 | 3/20 | 65 | $10,427.70 | $103,171.44 | $92,743.74 |
| Kandalepas | 3/3/2015 | 3/6/2015 | 140 | 3/20 | 65 | $2,918.35 | $40,530.91 | $37,612.56 |
| Bonvissuto | 2/25/2015 | 3/6/2015 | 144 | 3/20 | 65 | $5,296.00 | $38,973.11 | $33,677.11 |
| Carlucci | 3/2/2015 | 3/6/2015 | 40 | 3/20 | 60, 65 | $2,023.63 | $16,515.27 | $14,491.64 |
| | | | | | | | | **Total Profit: $866,628.87** |

As alleged in the indictment, Weller paid Kourtis a kickback in the form of at least 10 pounds of marijuana, which Kourtis sold to others and profited at least $20,000. Indictment at ¶¶ 4(t) and 4(u). The government expects Kourtis to testify at trial that he received the marijuana from Weller in approximately two-pound increments, about every two months, for roughly a year and a half.

**ARGUMENT**

I. **Weller's kickback of marijuana to Kourtis is direct evidence of the charged conspiracy and not subject to Federal Rule of Evidence 404(b)**

Weller's payment of marijuana to Kourtis is direct evidence of the charged conspiracy in this case. It proves that Weller and Kourtis had an agreement to engage in illegal insider trading. Specifically, the evidence helps to establish that Kourtis provided material, nonpublic information about Life Time Fitness to Weller, and that Weller agreed to and did pay Kourtis for that information. The evidence also helps to establish Weller's knowledge of the illegality of his trading, as he paid the kickback to Kourtis in a manner that was not easily traceable. Rather than

4

provide a kickback to Kourtis by check, wire, or even a lump sum of cash, he instead periodically gave Kourtis marijuana over the course of a year and a half, making the benefit provided to Kourtis difficult to trace and detect.

As the Seventh Circuit has recognized, "direct evidence of a crime is almost always admissible against a defendant." *United States v. Gorman*, 613 F.3d 711, 717 (7th Cir. 2010). Because the testimony at issue is direct evidence of the charged conspiracy, Rule 404(b) is inapplicable. *Id.* at 719; *see also*, *United States v. Lane*, 323 F.3d 568, 579 (7th Cir. 2003) ("Rule 404(b) is inapplicable where the 'bad acts' alleged are really direct evidence of an essential part of the crime charged."). In this case, the evidence does not relate to any other crimes, wrongs or acts under Rule 404(b), but instead to the charged conspiracy. *See United States v. Alviar,* 573 F.3d 526 (7th Cir. 2009) ("The contested evidence proved specific portions of the indictment. It did not concern 'other crimes, wrongs or acts,' but it concerned the charge crime. When evidence is embraced by the conspiracy in the indictment, the court need not resort to Rule 404(b) analysis."). As such, Kourtis' testimony about the kickback of marijuana should be admitted without reference to Rule 404(b).

**II.     Testimony about Weller's kickback of marijuana to Kourtis should not be barred by Rule 403**

Even though the testimony about Weller's kickback of marijuana to Kourtis is direct evidence of the charged conspiracy, the Court still must evaluate the evidence under Rule 403. Rule 403 provides that relevant evidence "may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice." Fed. R. Evid. 403 (emphasis added). "When determining the admissibility of evidence under Rule 403, [the Seventh Circuit] 'employ[s] a sliding scale approach: as the probative value increases, so does our tolerance of the risk of prejudice.' " *United States v. Earls*, 704 F.3d 466, 471 (7th Cir. 2012) (*quoting Whitehead v. Bond*,

680 F.3d 919, 930 (7th Cir. 2012).

Here, as discussed above, the evidence of Weller's payment of at least 10 pounds of marijuana is relevant, highly probative, and not unduly prejudicial. The evidence of the payment shows that Weller participated in the charged insider trading conspiracy. Specifically, the evidence shows that Weller paid Kourtis for the material, nonpublic information that Kourtis provided to Weller after using the information to trade and reap profits of $550,000. Likewise, the form of the payment—marijuana rather than wire, check or some other legitimate means of payment—shows Weller's intent to disguise the kickback to Kourtis. In this respect, the evidence is highly probative and not substantially outweighed by any prejudice that might result from the jury being informed that Weller provided marijuana to Kourtis. Certainly any such prejudice cannot be described as unfair. *United States v. Hanna*, 630 F.3d 505, 511 (7th Cir. 2010) ("Because most relevant evidence is, by its very nature, prejudicial, we have emphasized that evidence must be *unfairly* prejudicial to require exclusion.") (Emphasis in original).

While the Court could try to sanitize Kourtis' testimony, that would be confusing to the jury and prejudicial to the government. Restricting Kourtis' testimony to him having received "something of value" from Weller that Kourtis then sold for more than $20,000 would be a fiction likely to lead the jury to assume that the kickback payment came in the form of something far worse than marijuana. If Weller's payment were something more prejudicial—for example, if Weller had paid the kickback in the form of firearms, heroin, or child pornography—the risk of undue prejudice would be greater. The same is simply not true of marijuana. Instead, the government respectfully submits that any risk of prejudice here can be addressed by an appropriate limiting instruction to the jury.

## CONCLUSION

For the above reasons, the government respectfully requests that the Court grant this motion *in limine* and admit direct evidence of the charged conspiracy, as set forth above.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ John D. Mitchell*
JOHN D. MITCHELL
JASON YONAN
Assistant United States Attorneys
219 South Dearborn Street, Suite 500
Chicago, Illinois 60604
(312) 353-5300
