UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 CR 643-3 |
| vs. | ) | |
| | ) | Honorable Matthew F. Kennelly |
| PETER KOURTIS, | ) | U.S. District Court Judge |
| | ) | |
| Defendant. | ) | |

## **SENTENCING MEMORANDUM OF DEFENDANT PETER KOURTIS**

NOW COMES Defendant PETER KOURTIS, by his counsel, and for his Sentencing Memorandum, states as follows:

**I.  INTRODUCTION**

It has long been "the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Following the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Court has significantly more freedom than ever before to fashion a sentence that considers the unique circumstances of each defendant's case. *United States v. Baker*, 445 F. 3d 987, 991 (7th Cir. 2006).

In keeping with this longstanding tradition, the Court is no longer required to focus on the rigid Sentencing Guidelines. Rather, it is now free to thoughtfully and carefully consider each of the relevant factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence. *United States v. Robertson*, 662 F. 3d 871, 875 (7th Cir. 2011). While the Court still must calculate the sentencing range under the Guidelines, that calculation is merely advisory and

accedes to the Court's individualized assessment of the facts presented and its conclusions based on the sentencing factors set forth in § 3553(a). *Gall v. United States*, 552 U.S. 38, 50 (2007); *United States v. Holt*, 486 F. 3d 997, 1004 (7th Cir. 2007). At its very outset, that statutory provision directs that a sentencing court must impose a sentence that is "sufficient, *but not greater than necessary*" to satisfy the purposes of sentencing. 18 U.S.C. § 3553(a) (emphasis added). Given the Court's familiarity with the underlying case and its "institutional advantage" in making sentencing decisions, it is best suited to "find facts and judge their import" to achieve that goal of imposing only the sentence that is minimally necessary in each individual case. *United States v. Carter*, 538 F. 3d 784, 790 (7th Cir. 2008).

These principles of individualized sentencing and least restrictive alternatives are reinforced by the American Bar Association's standards for criminal justice sentencing, which advise sentencing courts that the sentence imposed should be "*the minimum sanction* that is consistent with the gravity of the offense, the culpability of the offender, the offender's criminal history, and the personal characteristics of an individual offender that may be taken into account." The ABA Standard for Criminal Justice Sentencing 18-6.1 (emphasis added).

In light of the statutory requirements, Mr. Kourtis offers the following analysis of the relevant sentencing factors that the Court must consider under § 3553(a).

## II. APPLICATION OF § 3553 FACTORS

In addition to calculating the proper offense level under the Sentencing Guidelines in light of the parties' respective positions, the Court must consider each of the § 3553(a) factors, as applicable, and "tailor the sentence" to fit the circumstances of the case. *Booker*, 543 U.S. at 245. Those factors include:

1. the nature of the offense and history and characteristics of the defendant;

2. the purpose of sentencing;

3. the kinds of sentences available;

4. the Sentencing Guidelines;

5. the policy statements issued by the Sentencing Commission;

6. the need to avoid unwarranted disparities among similar offenders; and

7. the need to provide restitution to any victims of the offense.

Application of the factors in this case warrants the conclusion that a sentence of probation with a significant community service component is appropriate. Indeed, this case is emblematic of why the Supreme Court rejected the mandatory and mechanical application of the Sentencing Guidelines and restored the Court's discretion to consider the unique characteristics of the individual and the circumstances of his offense in crafting an appropriate sentence.

**A. The History and Characteristics of Peter Kourtis**

Peter Kourtis' background, devotion to family, and his record of hard work are set forth in detail in the Probation Officer's Presentence Investigation Report (the "PSIR"). As reflected in the character reference letters being submitted under separate cover, his family, friends, employer, and others are genuinely supportive of him. His life is centered around family and trying to support his fiancée and children as best he can.

Mr. Kourtis met his fiancée, Anca, 11 years ago. They have two young children, Peter Jr., age 9, and Victoria, age 7. Anca came to the U.S. from Romania in 2003. She describes Peter as the love of her life and her best friend. Anca summarizes Mr. Kourtis' devotion to his family:

> Pete is a very loving and devoted father, he's very hands on, and even though he is trying very hard to provide for us, he always makes sure to be 100% involved in

raising our children, trying to give them the best education and expose them to as many sports and activities as possible.

Mr. Kourtis's extraordinary commitment to family is not limited to his immediate family. He has provided assistance, care, love, and support to his sister's family as well. Mr. Kourtis has been very supportive and involved in the life of his only niece, Pamela. She is the Godmother of Mr. Kourtis' son, Pete Jr., and he is the Godfather of Pamela's daughter, Anastasia. Pamela, whose own father abandoned the family when she was only in the 3rd grade, states about her uncle:

> Peter played a major role in my life and I will forever be grateful for that. Peter was a very young man himself, so this was a lot for him to take on or for anyone for that matter. …Peter would never hurt anyone, he is loving and compassionate, smart, hardworking, and incredibly understanding. A true role model to me.

The letters being submitted to the Probation Officer and the Court include letters from family, friends, and business associates powerfully attesting to Mr. Kourtis' good-heartedness, his generosity of spirit, and his devotion to family. We ask the Court to consider the personal and professional background of Peter Kourtis in the imposition of sentence.

B.     **The Nature of the Offense**

The Court is fully familiar with the facts surrounding the offense of conviction.  Mr. Kourtis fully recognizes the seriousness of the offense and the seriousness of his conduct.  As set forth in the Plea Agreement, in his statement to the Court at the time of entering his plea, and in his actions throughout this prosecution, Mr. Kourtis fully acknowledges and accepts responsibility for the very serious crime he has committed.

Significantly, Mr. Kourtis fully cooperated with the government in its investigation and prosecution of this offense.  He voluntarily met with prosecutors and agents early on, truthfully assisting investigators in understanding how the scheme worked, as well as his involvement and

that of others. As acknowledged by the Government, his cooperation began well in advance of the indictment. He testified before the grand jury, and he provided valuable testimony at the trial of co-defendant Weller. Moreover, as also set forth by the Government in its Sentencing Memorandum, Mr. Kourtis' early cooperation "undoubtedly assisted the government in successful prosecutions of several of his eight co-defendants." Govt. Sent. Mem. at 12. Indeed, but for Mr. Kourtis' cooperation, the Government would not have been able to charge co-defendants Mansur and Weller. Furthermore, in addition to his critical testimony at the trial of co-defendant Weller, Mr. Kourtis' availability and willingness to testify truthfully regarding his dealings with co-defendant Mansur undoubtedly contributed significantly to Mansur's decision to plead guilty. In short, Peter Kourtis has steadfastly maintained his commitment to assist the Government. The Government acknowledges that Mr. Kourtis' "pre-indictment acceptance of responsibility and substantial cooperation are important factors for the Court to consider" in imposing sentence. Govt. Sent. Mem at 9. The Government has agreed to move the Court for a departure and to impose a sentence below the advisory Sentencing Guideline range.

**C.    Sentencing Factors**

Section 3553(a)(2) provides the most crucial considerations in determining an appropriate sentence that best serves the interests of the public and truly reflects the rehabilitative potential of the defendant. Consideration of these factors illustrates why in this case, probation is a punishment "sufficient, but not greater than necessary, to accomplish the sentencing goals advanced." *Kimbrough v.United States*, 552 U.S. 85, 111 (2005).

**1. The Need to Protect the Public from Mr. Kourtis is Slight.**

First, the need to protect the public from Mr. Kourtis is slight. Simply put, he is highly unlikely to reoffend and poses no threat to the public at large.

In addition, as the Seventh Circuit has recognized, it is perfectly appropriate for the Court to consider a defendant's age in determining a sentence. Indeed, "the tendency to commit crimes, violent and otherwise, diminishes with age." *United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006). In fact, the United States Sentencing Commission has observed that statistically, "[r]ecidivism rates decline consistently as age increases." See United States Sentencing Commission, "Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines," at 12, 28 (2004) (found at http://www.ussc.gov/Research/ Research_Publications/Recidivism/ 200405_Recidivism_Criminal_History.pdf); *Bullion*, 466 F.3d at 577.

Here, Mr. Kourtis, while far from elderly, is a 52 year old man. Although he has a drug-related criminal history dating back decades, statistically, the likelihood of him reoffending is slight, and there is no other basis on which to conclude that he would reoffend. Nor is there any other need to impose a sentence of incarceration for the protection of the public. Indeed, as recounted in many of the letters submitted on his behalf, Mr. Kourtis has been the pillar of his family and is well-respected in the community.

**2. Alternative Rehabilitative Potential for Mr. Kourtis.**

It has long been recognized that non-violent criminals fare well when sentenced to intermediate sanctions. Allowing for a sentence of probation with appropriate limitations on his freedom would allow Mr. Kourtis to continue to contribute his family's well-being, but also be sufficiently punitive for Mr. Kourtis. Such an alternative sentence would be punitive for Mr. Kourtis as well. Allowing Mr. Kourtis to rejoin and serve the community in a productive way serves the dual purpose of repaying his debt to society and rehabilitating himself.

### 3. Avoiding Unwarranted Discrepancies Among Similar Offenders and Deterrence

The Probation Officer has recommended a sentence of a year and a day for Mr. Kourtis. The experienced Probation Officer's recommendation includes the following:

> In reviewing the facts of the offense, as well as taking into consideration the sentences imposed for his co-defendants, this officer believes a custodial sentence of 12 months and one day is most appropriate considering his cooperation, followed by one year supervised release. Such a sentence, this officer believes, reflects the seriousness of the offense, (and) meets the objectives of fair and just punishment.

In considering the sentences imposed on the other defendants in this case, the Court should consider, in particular, the sentences imposed on co-defendants Beshey and Mansur. In contrast to Mr. Kourtis, Mr. Beshey, who recruited Mr. Kourtis and extracted the promise of a kickback payment from Kourtis, fled to Mexico and had to be arrested and returned to the United States. Beshey provided no cooperation to the Government. Similarly, co-defendant Mansur chose not to cooperate and thus provided no assistance, much less substantial assistance, to the Government. Mr. Beshey received a sentence of a year and a day, while Mansur received a sentence of 4 months' incarceration.

While deterrence is certainly an appropriate factor to be considered, so too is the benefit to be conferred to those who cooperate. The significant extent of Mr. Kourtis' cooperation is detailed above and is freely acknowledged by the Government. A sentence of probation with a substantial community service component would serve to both deter potential future criminal conduct and encourage cooperation with the authorities by those who have engaged in criminal conduct. This is especially important in the context of insider trading cases. As the Government argues, and as the Court is well-aware, insider trading is a particularly difficult crime to detect. Here, but for Mr. Kourtis' cooperation, the full extent and scope of the criminal scheme would not have been known or prosecuted.

**C. Sentencing Recommendation**

Based upon the information contained in the PSIR, this memorandum, the character reference letters submitted on Mr. Kourtis' behalf, and given the mandate of §18 U.S.C. 3553(a)(3) for the Court to consider "the kinds of sentences available," a sentence of probation with a significant community service requirement would fully satisfy the goals of sentencing. The wide endorsement of community service by both federal and state courts can be attributed to individual judges who recognize that it "…is a burdensome penalty that meets with widespread public approval, is inexpensive to administer…produces public value…and…can to a significant extent be scaled to the seriousness of crimes. *Intermediate Sanctions in Sentencing Guidelines*, National Institute of Justice, May 1997.

A 2005 publication of the Administrative Office of the U.S. Courts described community service as "a flexible, personalized, and humane sanction, a way for the offender to repay or restore the community. It is practical, cost-effective, and fair — a 'win-win' proposition for everyone involved." *Court & Community: An Information Series About U.S. Probation & Pretrial Services: Community Service,* Office of Probation and Pretrial Services, Administrative Office of the U.S. Court, 2005 (http://www.uscourts.gov/misc/revision-community.pdf). "Community service addresses the traditional sentencing goals of punishment, reparation, restitution, and rehabilitation….It restricts offenders' personal liberty…allows offenders to atone or 'make the victim whole' in a constructive way…[and] may be regarded as…a form of symbolic restitution when the community is the victim." *Id*. In selecting an appropriate candidate to perform community service, U.S. Probation and Pretrial Services recommends:

> Courts can use community service successfully with a wide spectrum of offenders: corporations and individuals, first offenders and recidivists, the indigent and the affluent, juveniles and senior citizens. Not every offender is a good candidate for community

service. Courts look for offenders with personal and social stability, who are willing, motivated, and who have no history of violence.

Peter Kourtis fits that description.

The concept of alternative sentences is not simply something that has been discussed in the abstract; many courts have embraced the idea and imposed sentences that include probation and community service for defendants, who, like Peter Kourtis, satisfy the relevant criteria.

Most importantly, a sentence of probation with a community service requirement would permit Mr. Kourtis to remain a part of the family life to which he is critical and to serve an active and beneficial role in the community. It would also constitute a substantial loss of liberty for Mr. Kourtis and serve as both a deterrent to others and an incentive to cooperate those who find themselves in trouble with the authorities.

**III. CONCLUSION**

As the Court considers what constitutes a reasonable sentence pursuant to § 3553(a), it should keep in mind the Supreme Court's admonition that "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (internal quotations omitted). Furthermore, in *Koon v. United States*, 518 U.S. 81, 113 (1996), the Supreme Court observed, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

A sentence of probation with a substantial community service requirement would adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for Peter Kourtis. The significant mitigating factors relating to Mr. Kourtis's personal, professional and community background, the seriousness of the offense, his

extraordinary cooperation, and his potential for rehabilitation within his community provide compelling support for a sentence of probation with community service.

            Respectfully submitted,

            /s/ *Sergio E. Acosta*

Sergio E. Acosta
AKERMAN, LLP
71 S. Wacker Drive, 47th Floor
Chicago, Illinois 60606
312-870-8025
sergio.acosta@akerman.com

**CERTIFICATE OF SERVICE**

I, Sergio E. Acosta, an attorney, hereby certify that a copy of the foregoing **Sentencing Memorandum For Defendant Peter Kourtis** was filed on August 6, 2019 using the CM/ECF system, which will send notification of such filing to all counsel of record.

>           /s/ *Sergio E. Acosta*
>           Sergio E. Acosta